**Constancio CASARES et al., Appellants,**

**v.**

**John A. KNEBEL, Individually and in his capacity as acting United States Secretary of Agriculture, et al.**

**No. 75–1197.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 12, 1976.

Decided Nov. 26, 1976.

---

Howard S. Scher, Migrant Legal Action Program, and Robert S. Catz, Antioch School of Law, Washington, D.C., for appellants.

Richard A. Graham, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry, Thomas G. Corcoran, Jr., and Stuart M. Gerson, Asst. U.S. Attys., Washington, D.C., at the time the brief was filed, were on the brief for appellee.

Charles S. Murphy and Wilbur L. Fugate, Washington, D.C., were on the brief for appellee, National Sugarbeet Growers Federation, et al.

David C. Todd and E. Bruce Butler, Washington, D.C., were on the brief for appellees, American Sugar Cane League of the United States of America, Inc., et al.

Before TAMM and ROBINSON, Circuit Judges, and JUSTICE,* United States District Judge for the Eastern District of Texas.

JUSTICE, District Judge:

Appellants bring this action pursuant to 7 U.S.C. § 1131(c)(1), which allows government subsidies to those producers of sugarcane and sugarbeets who pay fair and reasonable wages to their workers. The statutory scheme vests authority in the Secretary of Agriculture to determine the fair and reasonable wages for workers. In making his determination, the Secretary is to utilize "the standards therefore formally established by him under the Agriculture Adjustment Act." 7 U.S.C. § 1131(c)(1). These standards include: "[the] cost of living, prices of sugar and by-products, income from sugar beets [or sugarcane] and costs of production." 39 Fed.Reg. 4752 (February 7, 1974). This appeal concerns wage determinations set by the Secretary of Agriculture for the year 1974.

Appellants do not attack the Secretary's compliance with the forms and procedures

Sitting by designation pursuant to 28 U.S.C. § 292(d).

which are to be followed in determining the wage rate, nor do they allege that the wage determination for the year 1974 was incorrect or arbitrary at the time it was made. Instead, they contend that events subsequent to that determination "rendered the application of those determinations arbitrary and capricious and an abuse of discretion under law."

## JURISDICTION

7 U.S.C. § 1154 establishes jurisdiction in federal district courts to consider certain actions arising under the Sugar Act. It provides, in pertinent part:

> The several district courts of the United States are vested with jurisdiction specifically to enforce, and to prevent and restrain any person from violating the provisions of this chapter or of any order or regulation made or issued pursuant to this chapter and, except as provided in sections 1115 and 1136 of this title, to review any regulation, issued pursuant to this chapter in accordance with chapter 7 of Title 5. If and when the Secretary shall so request, it shall be the duty of the several United States Attorneys, in their respective districts to institute proceedings to enforce the remedies and to collect the penalties, fees and forfeitures provided for in the chapter. The remedies provided for in this chapter shall be in addition to, and not exclusive of, any of the remedies or penalties existing at law or in equity.

The district courts are thus given jurisdiction, "except as provided in Sections 1115[1] and 1136."

The latter section provides:

> The facts constituting the basis for any payment, or the amount thereof authorized to be made under this subchapter, officially determined in conformity with rules or regulations prescribed by the Secretary shall be reviewable only by the Secretary and his determinations with respect thereto shall be final and conclusive.

■ Hence, the statutory scheme entrusts to the sole discretion of the Secretary of Agriculture the investigation of relevant facts and determination of appropriate payments arising under the Sugar Act, at least so long as the Secretary acts "in conformity with [prescribed] rules or regulations." Appellants argue, however, that the "facts constituting the basis for any payment" (rendered unreviewable to the district court under § 1136) refer only to the facts constituting the basis for any subsidy payment. Reasoning from this premise, appellants contend that while the Secretary's determination of the appropriate subsidy payment is inviolate, his determination of the appropriate wage to be paid to the workers is fully reviewable by the district court.

In finding a lack of jurisdiction in this case, the district court relied on *Mario Mercado E Hijos v. Benson*, 97 U.S.App.D.C. 298, 231 F.2d 251 (1956). In *Mercado*, a Puerto Rican producer-processor of sugar failed to pay for beets or cane grown by other producers at a rate "determined by the Secretary [of Agriculture as] fair and reasonable after investigation and due notice and opportunity for public hearing." The Secretary, acting pursuant to 7 U.S.C. § 1131(c)(2)[2] ruled that subsidies would not be paid to the appellant producer-processor for the year in question.

■ The appellant in *Mercado*, maintaining that the Secretary's determination was based on a constitutionally inadequate hearing and that the rate fixed by the Secretary was confiscatory, urged that he was there-

---

1. This section concerns the allotment of quotas "to assure an orderly and adequate flow of sugar," and is unrelated to the subject matter of this appeal.

2. Section 1131(c)(2) provides as follows:

> That the producer on the farm who is also, directly a processor of sugar beets or sugarcane, as may be determined by the Secretary shall have paid, or contracted to pay under either purchase or toll agreements, for any sugar beets or sugarcane grown by other producers and processed by him at rates not less than those that may be determined by the Secretary to be fair and reasonable after investigation and due notice and opportunity for public hearing.

by deprived of property without due process of law. This court found that the district court was without jurisdiction to consider the Secretary's determination, since 7 U.S.C. § 1136 "makes it clear that Congress intended to preclude judicial review, not only of the Secretary's finding but of the hearing which led to it." 231 F.2d at 252. As *Mercado* has not been questioned and appears to be controlling as to the facts of this appeal, which presents only a nonconstitutional issue of statutory construction, we reject the appellants' challenge to the district court's finding of lack of jurisdiction.

## THE MERITS

■ Assuming, *arguendo*, that this court has jurisdiction of this appeal, "the appellants' case is simply this: the Secretary has a duty to reconsider the fair and reasonable wages set previously in light of the drastic economic changes which has occurred." Brief for Appellants at 24. In this regard, the appellants maintain that, although the sugar beet wages for 1974 were based on an anticipated 6% to 7% increase in the cost of living and the sugar cane wages were based on an anticipated 11% cost of living increase, the *de facto* cost increase for sugar workers was 25% to 45%. The appellants further assert that sugar prices, and the consequent profit to the producers, increased enormously in 1974, although the Secretary anticipated that sugar beet profits would decrease in 1974, and that sugar cane profits would show only a moderate increase.

The responses of the various appellees to these contentions of the appellants find a common genesis in the "Statement of Reasons . . . for not Reconsidering 1974 Sugar Crop Wage Determinations", compiled by Kenneth E. Frick, Administrator of the FDA. In denying the relief requested by the appellants, the court below stated that these reasons "certainly have a rational basis."

In summary, the reasons were articulated as follows:

1. The economic picture for the sugar workers in 1974 was not so bleak, and the contrast in wages and profits was not as marked, as the sugar workers presently maintain.

2. With minor exceptions for technical errors, the Secretary has not redetermined wages in the past, even when there was a "windfall" to the workers. "In the few instances where wage determinations were amended, it was done shortly after the original determination and prior to the time any substantial amount of work had been performed." Brief for Appellee Butz at 24.

3. The farm workers who would receive back wages are now scattered, and many could not be found, despite the allegedly massive administrative undertaking that would be required.

4. Producers must know in advance what the wage rates will be, in order that they may make an informed judgment in recruiting their work force and in deciding whether to plant sugar beets or an alternate crop.

5. Since the Sugar Act expired on December 31, 1974, the Secretary has no further authority to make wage determinations. "There is no longer any appropriation to carry out any such duties, and the staff has been dismantled."

The appellees also point out that two prior decisions of the United States District Court for the District of Columbia are contrary to the appellants' arguments. In *Freeman v. United States Department of Agriculture*, 350 F.Supp. 457 (D.D.C. 1972) (*Freeman I*), migrant sugar workers appealed from the decision of the Secretary to rescind the previously announced sugar rates for the 1971–1972 season, because of a possible conflict with the Economic Stabilization Act. The court invalidated the Secretary's action, ordered him to set the minimum wage rate, and further ordered that the rate be applied retroactively to the start of the season. In so holding the *Freeman I* court, after reviewing the provisions and purposes of the Sugar Act, held:

Defendants' conduct in interpreting and applying these statutory and regulatory

provisions during the past twenty-two years compels the conclusion that this annual determination must be issued or made effective on or about the beginning of the Louisiana sugarcane harvest season (*i.e.,* October 1 of any given year). Defendants' failure to issue the 1971 Louisiana wage determination until December 28, 1971, and their adoption of January 10, 1972, rather than the beginning of the 1971 harvest, as the effective date of the 1971 wage determination are in violation of defendants' obligations under the Sugar Act and the regulations promulgated in implementation thereof.

*Freeman I* at 460.

Pursuant to the court's mandate in *Freeman I*, the Secretary redetermined the sugar-workers' wages, but set them at a rate lower than the original wage determination. Finding this second determination to be invalid, the court in *Freeman v. U.S.D.A.,* 358 F.Supp. 1305 (D.D.C. 1973) (*Freeman II*), stated:

> This Court has already held that defendants must make an annual wage determination effective on or about the beginning of the Louisiana sugarcane harvest season . . . A logical and necessary corollary of this holding is that defendants, when making a wage determination, must consider only events occurring prior to the start of the harvest season. If the requirement that defendants make an annual wage determination effective at the start of the harvest is to be something more than a technical requirement—a mere formality—then the annual determination must be based on the state of affairs existing at, or prior to, that effective date. Consequently, when making the new wage determination, defendants may not consider events occurring after the start of the 1971 harvest—*i.e.,* October 1, 1971.

> \* \* \* \* \* \*

> Defendants' determination of fair and reasonable wage rates must be based solely on conditions existing at, or prior to, the effective date of the wage deter-

mination. *Id.* at 1307–1308 (citations omitted).

Although this court is not, of course, bound by the decisions in *Freeman I* and *II*, Judge Pratt's observations regarding the Sugar Act are persuasive and directly relevant to the instant case. As the district court held, the relief sought by the appellants "cannot be reconciled with the obligations imposed by *Freeman.*"

For the above reasons, we find that the district court was correct in dismissing this action and accordingly, the judgment of the district court is

*Affirmed*